UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

PAUL ANTHONY BRISSETT,

        Petitioner,

  -v-                                    No. 18-CV-2831-LTS

THOMAS DECKER, in his official capacity
as New York Field Office Director for U.S.
Immigration and Customs Enforcement,
KIRSTJEN NIELSEN, in her official capacity
as Secretary of the U.S. Department of
Homeland Security; JEFFERSON B.
SESSIONS, in his official capacity as
Attorney General of the United States; and
the UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,

        Respondents.

-------------------------------------------------------x

OPINION AND ORDER

APPEARANCES:

| THE LEGAL AID SOCIETY | GEOFFREY S. BERMAN |
|---|---|
| By:  Seymour James, Jr.<br>      Adriene Holder<br>      Hasan Shafiqullah<br>      Gregory P. Copeland<br>      Sarah T. Gillman<br>      Julie Dona<br>      Pamela Griffith<br><br>199 Water Street<br>New York, New York 10038 | United States Attorney for the Southern District of New York<br><br>By:  Joseph N. Cordaro<br>      Michael J. Byars<br>      Assistant United States Attorneys<br><br>86 Chambers Street<br>New York, New York 10007 |
| *Attorneys for Petitioner* | *Attorney for Respondents* |

LAURA TAYLOR SWAIN, United States District Judge

Petitioner Paul Anthony Brissett ("Brissett" or "Petitioner"), who has been detained without a bond hearing by the United States Department of Homeland Security ("DHS" or "the Government") since November 1, 2017, in connection with removal proceedings, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Brissett has been detained pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b), which mandates the detention of certain aliens seeking to enter the country. Brissett seeks (i) immediate release or an order requiring an individualized bond hearing during which the Government would be required to prove the necessity of his continued detention, and (ii) an injunction barring Respondents from transferring him outside the jurisdiction of the New York Field Office pending the resolution of this case. Brissett also seeks costs and reasonable attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

The Court has jurisdiction of this petition pursuant to 28 U.S.C. §§ 1331 and 2241.

The Court has considered thoroughly the record, including Brissett's petition and accompanying exhibits (Docket Entry No. 1, "Petition"), Respondents' memorandum in opposition to the Petition and accompanying papers (Docket Entry Nos. 13, 14, and 15), and Brissett's reply memorandum and accompanying exhibits (Docket Entry No. 16).

For the following reasons, Brissett's Petition is granted to the extent that the Court finds that Petitioner is entitled to an individualized bond hearing in which the Government bears the burden of proving by clear and convincing evidence that Petitioner poses a risk of flight or a danger to the community. Respondents are directed to provide Petitioner such a bond hearing within 14 days of this Opinion and Order. Respondents are also prohibited from

transferring Petitioner outside the jurisdiction of the New York Field Office pending the hearing and determination of the bond proceeding. The Petition is denied in all other respects.

BACKGROUND

The following summary of the pertinent facts of this case is drawn from the Petition unless otherwise indicated. Brissett is a citizen of Jamaica and has been a lawful permanent resident ("LPR") of the United States since 2010. (Petition ¶ 1.) Brissett has strong family ties in the United States: he has been married to a United States citizen for 19 years, he has one daughter who is a United States citizen, and he has two sons who, like him, are LPRs. (Id.)

On October 28, 2017, Brissett and his wife traveled to Jamaica for a friend's wedding. (Id. ¶ 2.) When they returned on October 31, 2017, Brissett was detained at John F. Kennedy International Airport after presenting a valid Jamaican passport and United States Lawful Permanent Resident Card. (Id.) On November 1, 2017, the DHS issued a Notice to Appear, charging Brissett with three counts of inadmissibility based on an April 2016 state drug-related felony conviction. (Id. ¶¶ 3, 29; Docket Entry No. 13-2.) Brissett had spent no time in prison for the narcotics offense; he was sentenced to 18 months of probation. (Id. ¶¶ 28, 41) Brissett has been detained at the Bergen County Jail since the Government instituted removal proceedings against him on November 1, 2017. (Id. ¶ 8.)

Four "master calendar hearings" have been held in Brissett's case since his initial detention, but he has not received a bond hearing. (See Docket Entry No. 14, "Zabbia Decl.") Brissett's first master calendar hearing took place on December 27, 2017. (Zabbia Decl. ¶ 13.) At this hearing, the Immigration Judge adjourned the case to January 30, 2018, for a master calendar hearing on "pleadings." (Id.) On January 11, 2018, Brissett propounded a Freedom of

Information Act ("FOIA") request to the U.S. Citizenship and Immigration Services ("USCIS"). (Zabbia Decl. ¶ 14.) At the January 30, 2018, hearing, Brissett denied DHS' charges of removability and moved to terminate the removal proceedings pursuant to 8 C.F.R. Section 1240.12(c). (Petition ¶¶ 5 n.1, 8; Docket Entry No. 16-2.) The Immigration Judge adjourned the case to a third master calendar hearing on February 27, 2018, for "applications for relief from removal." (Zabbia Decl. ¶ 15.) Brissett appeared at the February 27, 2018, hearing, but DHS "indicated that it had been unable to brief the . . . 8 U.S.C. § 1182(a)(2)(A)(i)(I) CIMT charge" because it had sent Brissett's administrative file to USCIS to respond to Brissett's FOIA request. (Id. ¶¶ 14, 18.) As a result, the Immigration Judge adjourned the case to a fourth master calendar hearing on March 29, 2018. (Id. ¶ 18.) On March 29, 2018, Brissett applied for cancellation of removal pursuant to INA Section 240A. (Docket Entry No. 16-7.) The March 29, 2018, hearing was rescheduled to March 30, 2018, and again rescheduled to June 5, 2018, because the Immigration Judge was not available to hear Brissett's case on March 30, 2018. (Zabbia Decl. ¶ 21.) Brissett then successfully moved to expedite the June 5, 2018, hearing to May 10, 2018. (Id. ¶¶ 22, 23.) On May 10, 2018, the Immigration Judge adjourned the case to August 23, 2018, for a merits hearing on Brissett's application for cancellation of removal. (Id. ¶ 23.) Brissett's counsel asserts that "Mr. Brissett's hearing may very likely continue after [the August 23, 2018] hearing date" due to "the crowded dockets at the Varick Street Immigration Court." (Docket Entry No. 17 at 1.)

## DISCUSSION

Section 2241 of Title 28 of the United States Code "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution

or laws or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).

Brissett's Due Process Claim

Section 1225(b) of Title 8 of the United States Code, the statute at issue in Brissett's Petition, "authorizes the detention of certain aliens seeking to enter the country." Jennings v. Rodriguez, 138 S. Ct. 830, 833 (2018). More specifically, Section 1225(b)(2)(A) requires the detention of aliens arriving at the border, including certain LPRs, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" to the United States. 8 U.S.C.S. § 1225(b)(2)(A) (LexisNexis 2018). The statute requires that such detention continue through the removal proceedings. Jennings, 138 S. Ct. at 842.

Ordinarily, an LPR who reenters the country is not considered an alien seeking admission and, therefore, cannot be detained pursuant to Section 1225(b). See 8 U.S.C.S. § 1101(a)(13)(C) (LexisNexis 2008); see also Galo Espinal v. Decker, No. 17-CV-3492 (AKH), 2017 WL 4334004, at *2 (S.D.N.Y. June 30, 2017). There is, however, a statutory exception to this general rule: an LPR may be considered an arriving alien and detained pursuant to Section 1225(b) if the alien "has committed an offense identified in [8 U.S.C. § 1182(a)(2)]." See 8 U.S.C.S. § 1101(a)(13)(C)(v) (LexisNexis 2008). An alien who has committed an offense identified in 8 U.S.C. Section 1182(a)(2)(A)(i)[1] or whom officials know or believe to be an illicit

---

[1] The offenses enumerated in Section 1182(a)(2)(A)(i) include "acts which constitute the essential elements of (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime, or (II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a

narcotics trafficker (see id. § 1182(a)(2)(C)) is deemed "inadmissible," and, thus, must be detained pending removal proceedings in Immigration Court. See 8 U.S.C. §§ 1182(a)(2) (LexisNexis 2008), 1225(b)(2)(A) (LexisNexis 2018). Here, Respondents contend that Brissett's April 2016 state-law conviction constitutes a crime involving moral turpitude and a violation of a law relating to a controlled substance and provides a basis for belief that he is a narcotics trafficker, such that Brissett is now inadmissible under 8 U.S.C. Section 1182(a)(2). (Petition ¶ 3.)

In the First and Second Causes of Action of his Petition, Petitioner claims that his detention pursuant to Section 1225(b) violates the Due Process Clause of the federal Constitution, and that he is entitled to an individualized bond hearing to determine whether his continued detention is justified.[2] Respondents contend that due process rights do not attach to persons detained as inadmissible aliens under 8 U.S.C. Section 1225(b), as "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographical borders." (Docket Entry No. 15 at 8) (quoting Zadvydas v. Davis, 533 U.S. 678, 693 (2001)). According to Respondents, Petitioner is not entitled to a bond hearing because he is an "arriving alien" who was detained outside the country's borders and therefore does not enjoy constitutional protections such as due process.

---

foreign country relating to a controlled substance (as defined in section 802 of Title 21)." 8 U.S.C.S. § 1182(a)(2)(A)(i) (LexisNexis 2008).

[2] In the Third Cause of Action, Petitioner requests that the Court construe Section 1225(b) as not mandating detention where an alien has a "substantial challenge" to the ground for removal. The proposed construction is contrary to the plain language of the statute and must therefore be rejected, even though mandatory detention implicates constitutional concerns. See Jennings, 138 S. Ct. 830. Accordingly, the Third Cause of Action fails to state a claim upon which relief may be granted and is therefore dismissed.

Because "nothing in the statutory text [of 8 U.S.C. § 1225(b)] imposes any limit on the length of detention," nor does the statute "[say] anything whatsoever about bond hearings," Jennings, 138 S. Ct. at 842, the Court must address Brissett's constitutional argument. Neither the Supreme Court nor the Second Circuit has resolved the broad question of whether an arriving alien detained pursuant to 8 U.S.C. Section 1225(b) is entitled to a bond hearing when his or her detention becomes unreasonable in violation of the Due Process Clause of the Fifth Amendment.

The Supreme Court has recognized, however, that LPRs are "[people] within the protection of the Fifth Amendment," even outside the country's borders, when returning from a brief trip abroad. Kwong Hai Chew v. Colding, 344 U.S. 590, 596 (1953) (refusing to construe regulation as authorizing indefinite detention of LPR returning from a four-month trip abroad without a hearing). As the Supreme Court clarified subsequently, Kwong Hai Chew reasoned that "a resident alien returning from a brief trip has a right to due process just as would a continuously present resident alien." Landon v. Plasencia, 459 U.S. 21, 31-32 (1982) (holding that LPR could "invoke the Due Process Clause on returning to this country" and remanding for consideration of whether LPR was accorded due process at her exclusion hearing); see also Rosenberg v. Fleuti, 374 U.S. 449, 460 (1963) (in addressing question of statutory interpretation, looking to "[the Supreme] Court's holding in Kwong Hai Chew, [which stated] . . . that the returning resident alien is entitled as a matter of due process to a hearing on the charges underlying any attempt to exclude him . . . [and] which supports the general proposition that a resident alien who leaves this country is to be regarded as retaining certain basic rights"); Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 213 (1953) (stating that "a lawful

resident alien may not captiously be deprived of his constitutional rights to procedural due process" and citing Kwong Hai Chew).

The Second Circuit has adopted the reasoning of Kwong Hai Chew, and has applied it to conclude that LPRs are entitled to due process under the Fifth Amendment. Ali v. Reno, 22 F.3d 442, 448-49 (2d Cir. 1994) (holding that an LPR returning from a two-month religious pilgrimage to Saudi Arabia was entitled to due process rights, but concluding that he failed to demonstrate that those rights had been violated in his case). Other Circuit courts have done the same. See Rafeedie v. I.N.S., 880 F.2d 506, 519-24 (D.C. Cir. 1989) (holding that, in contrast to applicants for initial entry to the United States, LPRs have "a liberty interest in being permitted to reenter this country" and are therefore entitled to due process despite brief absence from the country); see also Othi v. Holder, 734 F.3d 259, 269-70 (4th Cir. 2013) (finding that petitioner was entitled to certain due process "[g]iven his LPR status and his short trip abroad," but concluding that he had received process due).

The Court now follows the principles enunciated in these decisions of the Supreme Court, Second Circuit, and other persuasive courts of appeal and concludes that, as an LPR, Brissett retains his due process rights despite his brief trip to Jamaica. The Court rejects Respondents' argument that the detention of aliens seeking admission is a sovereign prerogative of the political branches to the extent Respondents contend that they have the unreviewable power to strip LPRs of due process rights to a determination of the necessity of their detention under the circumstances presented in Brissett's Petition. (See Docket Entry No. 15 at 8-16); see also Kaoru Yamataya v. Fisher, 189 U.S. 86, 100-01 (1903) (stating that "this court has never held . . . that administrative officers, when executing the provisions of a statute involving the

liberty of persons, may disregard the fundamental principles that inhere in 'due process of law' as understood at the time of the adoption of the Constitution").

Thoughtful and persuasive lower court decisions in this Circuit have addressed the question of what due process protections should be afforded to aliens subject to mandatory detention under 8 U.S.C. Section 1226(c), and have concluded that those aliens are entitled to individualized determinations as to their risk of flight and dangerousness when their continued detention becomes unreasonable and unjustified. See Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *9 (S.D.N.Y. May 23, 2018) (citing Demore v. Kim, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring); see also Hernandez v. Decker, 18-CV-5026 (ALC), 2018 WL 3579108, at *10 (S.D.N.Y. July 25, 2018); Vallejo v. Decker, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018). Section 1226(c) applies to aliens present in the country who may be removed if they are classified as "deportable alien[s]" under 8 U.S.C. Section 1227(a). Jennings, 138 S. Ct. at 837. For example, an alien is classified as "deportable" if she has been convicted of certain criminal offenses after being admitted into the United States. 8 U.S.C.S § 1227(a) (LexisNexis 2018).

Like Section 1225(b), Section 1226(c) mandates detention of "deportable" aliens pending resolution of their removal proceedings. Jennings, 138 S. Ct. at 837-38. The due process considerations applicable to aliens detained pursuant to Section 1226(c) are equally applicable to LPRs detained pursuant to 1225(b). See Galo Espinal, 2017 WL 4334004, at *3. To conclude otherwise would mean that aliens "with no legal status residing in the United States would be afforded greater due process rights than individuals with LPR status who travel abroad." Id. Such a disparity cannot pass constitutional muster in this case, as there is nothing

pernicious about traveling to Jamaica for three days for a wedding that could warrant affording fewer rights to an alien like Brissett—an individual with legal status and strong ties to this country—than to an alien who may have entered the United States surreptitiously and failed to establish any ties to this country. District courts that have found the Section 1226(c) detention mandate violative of due process have noted that "'[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects'" and have concluded that, while mandatory detention pending the resolution of removal proceedings is not facially unconstitutional, such detention may become unconstitutional if prolonged unreasonably. Sajous, 2018 WL 2357266, at *8 (quoting Zadvydas, 533 U.S. at 690); see also Hernandez, 2018 WL 3579108, at *3-4.

The Court finds that, as an LPR who was detained on arrival after a brief and innocuous sojourn outside of the country, Brissett is entitled to an individualized determination as to his risk of flight and dangerousness once his continued detention has become unreasonable and unjustified. "[W]hether mandatory detention . . . has become unreasonable and thus a due process violation, must be decided using an as-applied, fact-based analysis." Sajous, 2018 WL 2357266, at *10 (citation omitted). Courts in this Circuit have conducted such fact-based analysis by considering factors derived from (i) the Supreme Court's decisions in Zadvydas (which suggested that detention for more than six months may be unconstitutional) and Demore (placing particular emphasis on Justice Kennedy's concurrence), (ii) factors applied in cases from other Circuits that involved similar due process concerns, and (iii) pre-Lora[3] decisions in

---

[3]   In Lora, the Second Circuit held that, in order to avoid the constitutional concerns raised by the prospect of indefinite detention, an immigrant detained pursuant to a statute requiring mandatory detention pending removal proceedings must be afforded a bail hearing before an immigration judge within six months of his or her detention. Lora v.

this District. Sajous, 2018 WL 2357266, at *10-11; see also Hernandez, 2018 WL 3579108, at *6-7. From these sources, recent decisions in this District have drawn five factors for consideration in determining whether an alien's detention is "unreasonable or unjustified" in violation of the Due Process Clause: "(1) the length of time the alien has been detained; (2) whether the alien is responsible for the delay; (3) whether the alien has asserted defenses to removal; (4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; and (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." Hernandez, 2018 WL 3579108, at *7 (citing Sajous, 2018 WL 2357266, at *10-11).

Having reviewed the facts pertaining to Brissett's detention in light of these factors, the Court concludes that Brissett's detention has been unreasonably prolonged and that he therefore is entitled to an individualized determination as to his risk of flight and dangerousness to the community. First, Brissett has been detained since November 1, 2017—over nine months. While Jennings held that Section 1225 does not contain an implicit six-month time limit on alien detention, 138 S. Ct. 830, the Supreme Court has also noted that "Congress previously doubted the constitutionality of detention for more than six months." Zadvydas, 533 U.S. at 701. Thus, "detention that has lasted longer than six months is more likely to be unreasonable, and thus contrary to due process, than detention of less than six months." Sajous, 2018 WL 2357266, at *10 (internal quotation marks omitted). Moreover, "the likely duration of continued detention is pertinent." Id. The length of Brissett's detention—currently over nine

---

Shanahan, 804 F.3d 601 (2d Cir. 2015). This decision was vacated in light of the Supreme Court's decision in Jennings. See Shanahan v. Lora, 138 S. Ct. 1260 (2018).

months—weighs in favor of finding that his detention is unreasonable.[4] His detention is also likely to continue, given the series of delays he has already experienced in the processing of his immigration proceedings.

Second, Brissett is not responsible for the delay in his proceedings. To the contrary, Brissett has sought to expedite hearings. To the extent that his actions have caused any delay, it has only been as a result of Brissett's efforts to obtain relief from removal. But "pursuit of relief from removal does not, in itself, undermine a claim that detention is unreasonably prolonged." Hernandez, 2018 WL 3579108, at *9. In Brissett's case, either DHS' failure to timely brief its charge of inadmissibility or the backlogs at the Immigration Court has been at the root of each delay.

Third, Brissett has asserted several defenses to removal. The "purpose behind the detention is premised upon the alien's deportability." Demore, 538 U.S. at 531 (Kennedy, J., concurring). Detention becomes attenuated from its purpose, then, when the alien asserts defenses to his or her deportability. Sajous, 2018 WL 2357266, at *11. On January 30, 2018, Brissett moved to terminate the removal proceedings brought against him, arguing that he was incorrectly classified as an arriving alien because he is an LPR. (Docket Entry No. 16-2.) In March 2018, he applied for cancellation of his removal proceedings, arguing that he satisfies the cancellation requirements set forth in 8 U.S.C. Section 1229b(a). (Docket Entry No. 16-7.) While the Court does not (and need not) express an opinion as to the merits of Petitioner's defenses, the Court notes that there is no contention that they are frivolous ones. Cf. Hernandez,

---

[4] Since Brissett's detention has already exceeded six months, the Court need not, and does not, consider whether the period of detention of an LPR for fewer than six months could be unreasonable.

2018 WL 3579108, at *9. The fact that Brissett has asserted multiple defenses to his deportability further weighs in favor of finding his detention unreasonable.

Fourth, Brissett's civil immigration detention exceeds the time he spent in prison for the crime that allegedly renders him removable. Indeed, Brissett was sentenced to probation and served no prison time for the crime that DHS maintains renders Brissett removable. Therefore, Brissett's civil immigration detention, which has lasted over nine months, far exceeds the time he spent in prison for the crime that allegedly renders him removable.

Fifth, the facility where Brissett is detained is not "meaningfully different from a penal institution for criminal detention." Sajous, 2018 WL 2357266, at *11. In fact, there is no difference at all: Brissett is detained at the Bergen County Jail.

Each of the five factors discussed provides substantial support for the Court's determination that Brissett's continued detention without a bond hearing is unreasonable and unconstitutional. Therefore, the Court concludes that Petitioner is entitled to an individualized bond hearing before an immigration judge to determine whether he is a flight risk or poses a danger to the community such that continued detention is warranted.[5]

Procedural Requirements for Bond Hearing

Petitioner asserts that, at his bond hearing, the Government should bear the burden of proof. While "[t]here is no controlling Circuit precedent supporting [Brissett's]

---

[5] In his Petition, Brissett also argues that he is entitled to an individualized bond hearing under the Eighth Amendment to the United States Constitution (Fourth Cause of Action). As the Court has resolved Petitioner's request for relief on due process grounds, the Court need not address this argument, and the Fourth Cause of Action is dismissed without prejudice.

request that the Government bear the burden of proof during an individualized bond hearing," Hylton v. Shanahan, No. 15-CV-1243 (LTS), 2015 WL 3604328, at *6 (S.D.N.Y. June 9, 2015), the Court is persuaded by recent decisions in this District that "due process requires that the Government demonstrate dangerousness or risk of flight by a clear and convincing standard at [Petitioner's] bond hearing." Hernandez, 2018 WL 3579108, at *11; see also Sajous, 2018 WL 2357266, at *12 (holding that "at the Petitioner's bond hearing, the Government must justify [Petitioner's] continued detention by proving by clear and convincing evidence that he is a flight risk or danger to the community.").

If the Government cannot meet its burden of proof and Petitioner is to be released on bond, the Immigration Judge must consider Petitioner's ability to pay when making a bond determination. Hernandez, 2018 WL 3579108, at *12. The Immigration Judge is required to set the amount of bond "'necessary to ensure the [individual's] presence at proceedings.'" Id. (quoting Matter of Urena, 25 I. & N. Dec. 140, 141-42 (BIA 2009)). The purpose of the bond is to ensure the Petitioner's presence at the proceedings, so "'[a] bond determination that does not include consideration of financial circumstances . . . is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests." Id. (quoting Hernandez v. Sessions, 872 F.3d 976, 991 & n.4 (9th Cir. 2017)). As "the amount likely to secure the appearance of an indigent person obviously differs from the amount necessary to secure the appearance of a wealthy person," failure to consider Petitioner's financial circumstances would run afoul of due process. Id. (internal quotation marks omitted). Therefore, Petitioner's financial circumstances must be taken into account in determining the amount of bond necessary to ensure his presence at future removal proceedings.

Request for Injunction

Petitioner also seeks an order enjoining Respondents from transferring him outside the jurisdiction of the New York Field Office pending the resolution of this case. While this decision resolves the Petition, fulfillment of due process in the circumstances of this case requires that Petitioner have the opportunity to continue to work with his current counsel in preparing for and conducting the hearing. Accordingly, Respondents are hereby prohibited from transferring Petitioner outside the jurisdiction of the New York Field Office prior to the conclusion of the hearing and determination of his bond proceeding.

Costs and Attorneys' Fees

Petitioner requests an award of his costs and reasonable attorneys' fees incurred pursuant to the EAJA, 28 U.S.C. Section 2412. Under Section 2412, the prevailing party in a civil action against the United States is entitled to attorneys' fees and other expenses unless the position of the United States "was substantially justified." 28 U.S.C.S § 2412(a)(1), (d)(1)(A) (LexisNexis 2013). A "prevailing party" is "'[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 603 (2001) (quoting Black's Law Dictionary). The judgment must create a "material alteration of the legal relationship of the parties." Id. at 604 (internal quotation marks omitted). In this case, Petitioner is clearly the prevailing party. By concluding that Petitioner is entitled to an individualized bond hearing, this Opinion and Order renders judgment in favor of Petitioner and creates a material alteration of the legal relationship of the parties.

The Court concludes, however, that the United States' position was substantially justified. "Substantially justified" means "justified to a degree that could satisfy a reasonable person." Vacchio v. Ashcroft, 404 F.3d 663, 674 (2d Cir. 2005) (quoting Comm'r of I.N.S. v. Jean, 496 U.S. 154, 158 n. 6 (1990)). The Second Circuit has held that the Government's position is substantially justified if it "had a reasonable basis in both law and fact." Id. (citation omitted). The Court concludes that Respondents' position had a reasonable basis in both law and fact for two reasons. First, based on the plain language of 8 U.S.C. Section 1182(a)(2)(A)(i)(II), it was reasonable for Respondents to conclude that Petitioner's April 2016 drug conviction was a violation of a state law "relating to a controlled substance," which, in turn, rendered Petitioner "not clearly and beyond a doubt entitled to be admitted" to the United States and, thus, rendered him properly detained under 8 U.S.C. Section 1225(b)(2)(A). Second, although the Court was ultimately unpersuaded by Respondents' arguments, the Court concludes that they were reasonable. Respondents' position that Petitioner was not entitled to a bond hearing was reasonable (i) in light of the absence of precedent from the Supreme Court and the Second Circuit, and (ii) in light of Respondents' reliance on Demore v. Kim, which holds that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." 538 U.S. at 526. In this case, where the issues presented in Brissett's Petition are "far from settled law," "there is no doubt that the Government is entitled— if not obligated—to put forth a good faith effort to defend the constitutionality of federal laws, especially those that have never been found unconstitutional." Vacchio, 404 F.3d at 675.

Because the Court concludes that Respondents' position in this case was substantially justified, Petitioner's request for an award of costs and attorneys' fees is denied.

CONCLUSION

For the foregoing reasons, the Petition is granted to the extent that the Court finds that Petitioner is entitled to an individualized bond hearing in which the Government bears the burden of proving by clear and convincing evidence that Petitioner poses a risk of flight or a danger to the community. Respondents are directed to provide Petitioner with such a bond hearing within 14 days of this Opinion and Order (i.e., by **August 30, 2018**). Respondents are prohibited from transferring Petitioner outside the jurisdiction of the New York Field Office pending the hearing and determination of the bond proceeding. The Petition is denied in all other respects. The Clerk of Court is respectfully requested to enter judgment in Petitioner's favor on the First and Second Causes of Action of the Petition, and dismissing the Third and Fourth Causes of Action of the Petition, and close this case.

Docket Entry No. 1 is resolved.

SO ORDERED.

Dated: New York, New York
August 16, 2018

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge